Juan Vázquez Lugo, demandante y apelado, *v.* Heraclio Girón, demandado y apelante.

Núm. 6803.—*Sometido:* Enero 21, 1936. *Resuelto:* Noviembre 10, 1936.

*Leopoldo Tormes García* y *C. Coll Cuchí,* abogados del apelante; *Erasto Arjona Siaca,* abogado del apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

La firma de Pietri & Cía. se dedicaba al cultivo de frutas, y para los fines de este caso podría decirse que tenía por especialidad el cultivo de chinas. Una de las cuestiones fundamentales en el caso surge con respecto a la cosecha de 1930. El demandante Vázquez, admitiendo que el demandado Girón era la única persona que traficaba con Pietri & Cía. en la compraventa de sus frutas durante el curso de dicho año, alegó e introdujo evidencia para probar que Girón había convenido en dividir sus ganancias en las frutas con el referido Vázquez y con Tiburcio Llorens, ac-

tuando de común acuerdo. Vázquez y Llorens eran socios, y habían acordado dividir el 50 por ciento de las utilidades que recibieran de Girón. Vázquez también alegó y ofreció prueba tendente a demostrar que Llorens cedió y traspasó su 25 por ciento a Vázquez. Girón contestó y suscitó varias defensas. El caso fué a juicio y la corte de Distrito de Ponce lo decidió a favor de Vázquez por el importe total solicitado, y dictó sentencia de conformidad.

Para nosotros, una de las cuestiones principales planteadas fué si Vázquez tuvo en alguna ocasión transacciones directas con Pietri & Cía. Él dijo que sí las tuvo, y la prueba tendió fuertemente a demostrar que él y sus hijos, tanto durante 1930 como antes, fueron a la finca de los Pietri, empacaron las frutas y las pusieron en condiciones de presentarlas al mercado. Dos testigos del demandado, que estaban conectados con la firma de Pietri & Cía., declararon que Vázquez no tenía relación alguna con Pietri.

También surgió la cuestión de si Vázquez y Llorens, o alguno de ellos, dió causa (*consideration*) alguna por su participación en los beneficios de la cosecha de 1930. Los testigos del demandante manifestaron que Vázquez y Llorens tenían anteriormente el derecho exclusivo de comprarle a Pietri. Los dos celebraron un contrato con Girón por virtud del cual entregaron a éste todos los derechos que tenían para con Pietri. El apelado, sin abandonar necesariamente la teoría de un derecho exclusivo, sostuvo que él y Llorens vendieron a Girón los derechos que tenían. Estamos convencidos de que, ya existiera un derecho exclusivo o no, Vázquez y Llorens, y en particular este último, compraban frutas continuamente a Pietri. Girón, así la corte inferior tuvo derecho a creer, acudió quizá a Llorens más bien que a Vázquez, con el propósito de comprarle los derechos que Vázquez y Llorens tenían para con los Pietri. La evidencia tendió a probar que los tres celebraron una entrevista durante la cual quedó consumado el convenio relativo a la división de los beneficios. Somos de opinión de

que ora Vázquez o Llorens tuvieran un derecho exclusivo o no, Llorens especialmente tenía un nexo o relación con los Pietri que Girón estaba ansioso de adquirir y que adquirió. Por razón de esta entrevista, Llorens y Vázquez cedieron cualquier posibilidad que pudieran haber tenido, para con los Pietri, de adquirir las frutas producidas en 1930. Las partes convinieron entre sí en que Girón probablemente podía obtener mejores condiciones de los Pietri, según se desprende de la prueba. La corte inferior tenía derecho a creer que Vázquez y Llorens conjuntamente celebraron un contrato con Girón sobre la división de los beneficios en parte de la cosecha cultivada por los Pietri en 1930. La prueba del demandante fué clara al efecto de que después que Girón tomó posesión, los dos hijos de Vázquez continuaron tomando parte en el empaque si es que no lo hicieron todo.

██ Se atacó muy seriamente el testimonio de Llorens. En conjunto la corte tenía derecho a considerarlo como un testigo digno de crédito e independiente. No obstante, en un juicio celebrado unos días antes al de este caso, Llorens declaró que nunca había cedido o convenido en ceder su parte en las ganancias a Vázquez. En el presente caso declaró lo contrario, manifestó que había cometido un error en el juicio anterior y que Vázquez le había convencido de que se había hecho la cesión. Prestó otro testimonio que tendía a sostener el caso del demandante, y el apelante insiste en que él no merecía que se le creyera. Ésta era cuestión que incumbía a la corte inferior y no estamos convencidos de que ella debió haber descartado el testimonio de Llorens.

██ La principal objeción a la conclusión de la corte con respecto a los beneficios recibidos por el demandado en la venta de las chinas, que ascendían a $3,078.72 fué que en vez de ofrecer evidencia de los verdaderos adquirentes de dichas frutas para probar el precio efectivamente obtenido, la corte descansó en el testimonio del hijo del demandante

en torno al precio a que las chinas fueron vendidas al demandado y también se basó en el testimonio de este mismo hijo como perito respecto al precio probable obtenido en el mercado del promedio de los precios a que se vendían las chinas para aquel entonces. La corte estuvo justificada en creer que las ganancias pudieron ascender a más de $1,000, juzgando por el testimonio del mismo demandado y por la carta escrita que éste trató de explicar. Podemos decir que la objeción principal es la falta de fundamento para demostrar la imposibilidad que hubo para presentar la mejor evidencia. Hubo otra prueba que sostuvo la conclusión de la corte, y el demandado dejó de atacar la cuantía de las ganancias presentando las facturas, como fácilmente pudo haberlo hecho. Creemos además que la evidencia admitida no fué perjudicial.

■ Consideraremos el importe de los daños y perjuicios concedidos por la corte. Una nota escrita por Girón al dorso de un sobre indicaba que la suma adeudada a Vázquez podía ser arreglada por $1,000. En la silla testifical, al referirse Girón a estos $1,000, mientras sugería que la cuantía quizá podía ser poco menos, admitió que tal vez podía ser un poco más.

El hijo de Vázquez ocupó la silla de los testigos. Su declaración tendió a demostrar que cierto número de cajas de chinas fué despachado y que las utilidades procedentes de las mismas ascendían a más de $3,000. Atribuye a Girón el origen de ciertos documentos que demuestran este resultado. De ello se desprendería que en lo que a Girón y Llorens concernía, la participación de éste ascendía a 1,500 ó más.

Algo de esto no es tan claro como podría serlo, pero de los autos aparecía lo suficiente para justificar a la corte llegar a la conclusión de que el importe de las utilidades adeudadas a Vázquez con motivo de los arreglos hechos con Llorens y por este último con Girón era $1,539.36.

Las anteriores consideraciones resuelven directa o indirectamente todos los señalamientos de error y *la sentencia debe ser confirmada.*

Los Jueces Señores Presidente del Toro y Asociado Travieso no intervinieron.